**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:10-cv-02255-WDM-KLM

FRED HIMSCHOOT and MARY M. HIMSCHOOT,

      Plaintiffs,

v.

AMERICAN HERITAGE LENDING CORPORATION, WELLS FARGO BANK, N.A. as Trustee for Soundview Home Loan Trust, MORTGAGE OPPORTUNITY GROUP and PUBLIC TRUSTEE OF CLEAR CREEK COUNTY, COLORADO,

      Defendants.

---

**SECOND AMENDED COMPLAINT, REQUEST FOR DECLARATORYJUDGMENT, AND JURY DEMAND**

---

COME NOW the Plaintiffs, Fred and Mary Himschoot (the"Himschoots")

and for their First Amended Complaint state and allege as follows:

**PARTIES**

1.     Plaintiffs have their primary residence at 599 Soda Creek Road, Idaho Springs, Colorado 80542.

2.     Defendant American Heritage Lending Corporation ("American Heritage") was a California corporation with a principle place of business located at 65 Enterprise, Suite 420, Aliso Viejo, California 92656.

3.     Defendant Mortgage Opportunity Group, (Mortgage Opportunity") is believed to be a California Corporation located at 65 Enterprise, Aliso Viejo, California 92656 and may be or may have been doing business as American Heritage Lending Corporation.

1

4.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), is a foreign corporation with its main office under the National Bank Act located at 101 N. Phillips Avenue, Sioux Falls, South Dakota 47104.

5.     Defendant Clear Creek County Public Trustee ("Public Trustee") is public trustee with a principle place of business located at 405 Argentine Street, Georgetown, Colorado 80444.

## JURISDICTION AND VENUE

6.     This Court has federal subject matter jurisdiction over the claims brought pursuant to the Real Estate Settlement Procedures Act, 12 USC §§ 2601, et seq., the Truth in Lending Act, 15 USC §§ 1601, et seq., and the Home Ownership and Equity Protection Act of 1994, 15 USC § 1639.

7.     This Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367(a).

8.     Venue is proper pursuant to 28 USC § 1321(b)(2).

## GENERAL ALLEGATIONS

9.     Plaintiff Fred Himschoot obtained a loan for building a home on the property located at 599 Soda Creek Road, Idaho Springs, Colorado 80452.  The property is jointly titled to Plaintiffs Fred Himschoot and Mary Himschoot.

10.     The loan on the subject property was refinanced in 2000.

11.     Thereafter, on or about April 23, 2007, Plaintiffs applied for funding to refinance the subject property from American Heritage Lending Corporation.

12.     Plaintiffs are the signatories on the re-finance loan documents.

13.     The subject property is the primary residence of the Plaintiffs.

2

14.    The April 23, 2007 mortgage loan at issue was a 30 year Adjustable Rate Mortgage ("ARM") in the amount of $503,548.16 that closed on or about April 27, 2007 at Gilpin Title Co., in Idaho Springs, Colorado.

15.    As part of the loan application process, the Plaintiffs were given an application for the loan on or April 23, 2007.  The completed loan application (Form 1003) application was dated April 27, 2007 and was given over the phone.

16.    Form 1003 indicated that the mortgage was in the amount of $563,120.00.  The term was 360 months or 30 years (50/30 year balloon) with an interest rate of 7.500%.  The anticipated closing costs were not listed on the Form 1003.

17.    The Plaintiffs received a Good Faith Estimate ("GFE") that was dated April 3, 2007.  The GFE represented that the parameters of the loan applied for were for a loan in the amount of $563,120.00 with an APR of 7.5%, monthly payment of $3,605.28, a 360 month term (50/30), a 30 year ARM, with projected closing costs of $13,640.03, pre-paids and escrows of $1,304.88, total settlement charges estimated to be $15,414.18, and finance charges were projected to be $13,181.43.

18.    The printed date on the GFE is April 23, 2007 and was given to the Plaintiffs at the closing.

19.    The GFE was not signed or dated by the Plaintiffs.

20.    According to the Truth in Lending Disclosure Statement, the total amount financed was $549,938.57, the APR was 10.714%, the monthly payment was $3,605.28,   the term was 360 months, amortization type was a 30-year

ARM, the finance charges were $1,825,801.27 and the total payments were listed as $2,375,739.84.

21.    At no time during the application process or at any time thereafter did the Plaintiffs receive the Federal Reserve Bank Brochure entitled *Consumer Handbook on Adjustable Rate Mortgages,* the brochure entitled *A Statement of Billing Rights*, or a *Home Equity Brochure* (or suitable substitute).

22.    At the closing, a HUD-1 "Statement of Settlement Charges" was provided to the Plaintiffs as part of the closing documents.    The HUD-1 Statement was not dated nor signed by Plaintiffs or Defendant American Heritage Lending Corporation.

23.    According to the HUD-1, the total amount of the loan was $563,120.00, the APR was not stated, the settlement/closing costs were $17,665.18, the Plaintiffs were paid $41,906.66 in cash at the closing, and the monthly payment was $3,605.28.

24.    The promissory note for the subject loan listed the amount financed as $563,120.00, the monthly payment (with P & I) was $3,605.28, the term was 360 months, the loan was a 50/30-year balloon, contained a pre-payment penalty, and indicated that the maximum interest rate that could be charged was $13.500%.

25.    The Deed of Trust was dated April 23, 2007.    According to the Forensic Compliance Audit dated April 16, 2010 for the loan at issue, the Deed of Trust appears not to have been signed at the closing.

4

26.     At the closing, the Plaintiffs were provided with three documents each entitled Notice of Right to Cancel and were purported to be the required Rescission notices under the TILA.  No Rescission Notices were addressed to or provided to the Plaintiffs.

27.     The Plaintiffs were never provided with the any notice of their rescission rights pursuant to the Colorado Consumer Credit Code.

28.     Upon closing, Plaintiffs paid $17,665.18 for settlement charges that included mortgage broker fees, origination fees, administrations fees, realtor's fees, credit reports, title insurance, notary public fees and other settlement services.

29.     As of April 16, 2010, the Plaintiffs made twenty five (25) payments totaling $90,132.00.  $4,007.88 has been paid for hazard insurance.

30.     Foreclosure proceedings were initiated by Defendant Wells Fargo on or about June 28, 2010 in Clear Creek County District Court.

31.     According to a Forensic Audit conducted on or about April 16, 2010.  Defendants violated numerous federal and state laws in the loan process.

32.     Defendant Wells Fargo acquired the loan at issue on April 23, 2010.

33.     During the course of the foreclosure proceedings, the Plaintiffs and Defendant Wells Fargo discussed a loan modification that would allow the Plaintiffs to retain their primary residence.

34.    Susan J. Hendrick, Esq., counsel for Wells Fargo emailed the undersigned correspondence from American Home Mortgage, Inc. notifying the Himschoots that their request for a loan modification was approved.    The Himschoots were advised that their new monthly payment would be $1,827.38 commencing September 1, 2010. 35.    Unfortunately, these documents were misplaced.  The undersigned emailed Ms. Hendrick on or about September 17, 2010 asking her if she had any luck in finding the modification documents.

35.    On that same day, Ms. Hendrick responded stating: "We sent you the agreement and have not heard back."

36.    After learning that the agreement had been sent, the undersigned apologized for misplacing the agreement and asked Ms. Hendrick to resend the same.

37.    Ms. Hendrick resent the documents to the undersigned on or about September 20, 2010.

38.    On September 22, 2010, the undersigned sent Ms. Hendrick an email stating that the loan was "very good," asked if the Total Amount Capitalized accounted for the payments made on the 2008 modification, and asked if the bank would agree to use a comparable reduction in principal and reduce the size of the balloon payment.

39.    Later that day, Ms. Hendrick represented that she would check on whether the loan accounted for the payments on the 2008 payments, advised that with a modification of that nature lenders do not reduce the capital, and that she was not sure on the balloon.

40.    On or about September 25, 2010, the undersigned sent an email to Ms. Hendricks stating as follows:

*Susan:*

1.    *The Himschoots accept your client's offer of Modification;*
2.    *Please send new docs as mine are past dated;*
3.    *Please cancel the Hearing Tuesday;*
4.    *Please decide if you want me or someone else to Move to Withdraw the Federal lawsuit with Prejudice;*
5.    *Please let me know if you failed to get a response to our request for a downward modification of the balloon, or if your client just ignored that;*
6.    *Thank you for the time you put in on this case.  I left a voice mail at your work also.*

41.    On or about September 26, 2010, Ms. Hendricks wrote:

*John:*

1)    *I will get the new docs with a new date.*
2)    *I will prepare the stipulation for the entry of the order authorizing    sale – and if the documents are signed and returned forthwith, the foreclosure will be withdrawn/dismissed.*
3)    *If you would please move to withdraw the federal lawsuit that would be wonderful, and I would appreciate it because it is easier to do without an entry of appearance on our side.*
4)    *No modification of the balloon.*

*Thank you for your time and attention to this matter.*

42.    On or about September 27, 2010, the parties entered into a stipulation in the Clear Creek County District Court proceeding.  The stipulation allowed the Court to enter an order authorizing the sale of Himschoot's property with the understanding that the foreclosure proceeding would be withdrawn or dismissed upon finalization of the loan modification agreed upon by the parties.

43.    The Clear Creek County District Court entered the Order Authorizing Sale on September 27, 2010.

44.    Despite Ms. Hendrick's representations, documents with the negotiated terms of the loan modification with new dates were not provided. Instead, the Himschoots received a new loan application.

45.    In an email dated October 9, 2010, the undersigned wrote, in relevant part, as follows:

> *Ms. Hendrick: I was shocked to have my client tell me he got an APPLICATION from the bank for a modification by registered mail. We have a mod, we negotiated it, and we let you take your foreclosure approval by stip based on that agreement. He relied upon your confirmation of the mod. He has agreed upon terms with your client.*

46.    On October 10, 2010, Ms. Hendricks responded as follows:

> *Let me look into it. Standard protocol is when your client doesn't return those documents timely, they have to requalify. Let me see what I can do on our end.*

47.    Finally, after several more communications, Ms. Hendrick wrote, in relevant part, as follows:

> *Now, your client will have to submit new profit and loss statements and a new loan modification with new numbers which will have to be offered because your clients delayed in sending in the executed loan modification in [sic].*

48.    To the extent Mortgage Opportunity Group is not or was not doing business as American Heritage Lending Corporation, Mortgage Opportunity Group may be liable to Plaintiffs pursuant to corporate veil piercing/alter ego.

**FIRST CLAIM FOR RELIEF – VIOLATION OF THE HOME OWNERS EQUITY PROTECTION ACT ("HOEPA") AS INCORPORATED INTO THE TRUTH IN LENDING ACT**

8

*Against Defendants American Heritage Lending Corporation, Mortgage Opportunity Group, and Wells Fargo Bank, N.A.*

48.     All preceding paragraphs are incorporated herein.

49.     The loan at issue is a HOEPA loan because the interest rate for the loan at issue, 13.500%, exceeded the "trigger rate" of 10.25%.  Additionally, the loan at issue was a high cost loan because the costs exceeded 8% of the loan amounts.

50.     HOEPA requires certain disclosures for HOEPA loans, as follows:

a.  A Notice that states*:  "You are not required to complete this agreement merely because you have received a loan application.  If you obtain this loan the lender will have a mortgage on your home.  You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan."*
b.  The Annual Percentage Rate accurate to within 1/8 of 1%.
c.  The amount of any regular monthly payments and the amount of any balloon payment.
d.  For variable rate loans a statement that the interest rate and monthly payments may increase.
e.  The amount of the single maximum monthly payment based on the maximum interest rate required to be disclosed under Sec. 226.30.
f.  The Amount Borrowed:  The total amount the consumer will borrow as reflected by the face amount of the note.

51.     In this case, none of the required disclosures were made as follows:

a.  That requires notice as set forth in Paragraph 51, subparagraph (a) above was never provided.
b.  The true APR was 11.008%.  No separate HOEPA disclosures of the APR were provided.  The only APR disclosure was contained in the TILA Disclosure sheet and it stated the APR was 10.714%. This is not within 1/8 of 1% of the actual APR.
c.  The single maximum monthly payment under the note was never disclosed.  At 7.500% (simple interest) that payment would have been $3,519.50 per month.  The only disclosed payment was $3,605.28 which corresponds to a face interest rate of 10.714%.

That is an understatement of more than $85.78 per month or $30,880.80 over the life of the loan. However, at $13.500%, the monthly payment would be $6,335.00, which is an understatement of more than $982,000.00 over the life of the loan.

d.   The Amount Borrowed was never disclosed. That amount was $563,120.00 (See Promissory Note), but that amount was never disclosed as part of the required HOEPA disclosures. There were no HOEPA disclosures.

52.   As a result of Defendants' violations of HOEPA, the Plaintiffs suffered monetary damages that include loss of their down payment and payments made to date, penalties and fines for statutory violations, reasonable attorney's fees and costs including expert witness fees and any other and further relief as this court deems just and proper.

## SECOND CLAIM FOR RELIEF – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA")

*Against Defendants American Heritage Lending Corporation, Mortgage Opportunity Group, and Wells Fargo Bank, N.A.*

53.   All preceding paragraphs are incorporated herein.

54.   RESPA requires certain disclosures in the form of published booklets that must be distributed to borrowers by the lender at the time of receipt or preparation of applications. They must describe in clear and concise language:

(a)   The nature and purpose of each cost incident to a settlement;
(b)   An explanation and sample HUD-1;
(c)   A description of the nature and purpose of escrow accounts;
(d)   An explanation of choices available to buyers of persons to provide necessary settlement serves; and,
(e)   An explanation of unfair practices and unreasonable charge to be avoided.

*See* 12 USC § 2604.27.

55.    No disclosures were provided to Plaintiffs.

56.    RESPA requires that a consumer be provided with a sample of a Settlement Statement or HUD-1 at the time an application is prepared for or by the consumer.  The HUD-1 must be given in co-ordination with the GFE so the borrower can understand the costs the consequences of the loan they are contemplating.

57.    No Sample HUD-1 was provided and, therefore, there were no initial disclosures to compare with the final loan numbers.

58.    The Final HUD-1 was provided, but it conclusively shows that the actual charges paid by the borrowers were not the same as those listed in the GFE.

59.    The amounts collected for escrows exceeded the RESPA allowances that limit escrows for property taxes, hazard insurance, mortgage insurance and other costs to two months (1/6 annual) of payments.

60.    A sample or preliminary TILA Disclosure Form must be provided to each borrower at the time they make an application for a loan.  This was not done in this case.

61.    As a result of Defendants' violations of RESPA, the Plaintiffs suffered monetary damages that include loss of their down payment and payments made to date, penalties and fines for statutory violations, reasonable attorney's fees and costs including expert witness fees and any other and further relief as this court deems just and proper.

11

**THIRD CLAIM FOR RELIEF – VIOLATION OF THE TRUTH IN LENDING ACT**

*Against Defendants American Heritage Lending Corporation, Mortgage Opportunity Group, and Wells Fargo Bank, N.A.*

62.     All previous paragraphs are incorporated herein.

63.     In this case, TILA required timely and accurate disclosure of the following:

(a)     The annual percentage rate (APR).
(b)     The finance charge.
(c)     The amount financed.
(d)     The total payments.
(e)     The payment schedule
(f)     The amount borrowed as reflected by the face of the note.
(g)     The specific Notice required by sub-paragraph 1.
(h)     The maximum monthly payment under a variable rate note.
(i)     A statement that the monthly payments and interest rates may increase. [1]

64.     In this case, several material disclosures were either not provided, or were not provided on time, or were inaccurate, as follows:

(a)     The amount financed was incorrect.  The actual amount financed was $563,120.00.  However the TILA disclosure stated that it was $549,938.57.  This is an error of more than $13,000.00.
(b)     The amount borrowed was not disclosed.
(c)     The maximum monthly payments were never disclosed.  At 13.500% interest the maximum payments would be $6,335.10 per month.  The Plaintiffs were quoted $3,605.28 as the initial monthly payment.  No maximum payment was ever disclosed.
(d)     The quoted APR was 7.500%; with a maximum face amount of 13.500%.  This figure is not the APR because it represents only the face amount of the note and does not include finance charges.  The actual APR is $10.635%.
(e)     Because the amount financed was inaccurate, the total payments and stated finance charges were also wrong.

---

[1] 12 USC § 226.23(a)(3) footnote 48 define those disclosures listed in paragraphs (a) – (e) as "material disclosures."  The disclosures set forth in paragraphs (f) through (i) are required by 12 USC § 226.32(c)-(d).

(f)     Because no maximum payment amount was ever disclosed, the payment schedule was wrong.

(g)     The actual APR computes to be over 10.635% when the monthly payments as set forth in the TILA are used.

65.     TILA contains special requirements for disclosures when the mortgage is an ARM.  The following errors, omissions, misrepresentations, or under-disclosures were present related to ARM disclosures:

(a)     The material disclosure booklets were not provided to Plaintiffs. *See* Paragraph (20), above.

(b)     ARM disclosures require that statements be included that say, "*a consumer should ask about the amount of any interest rate discounts*" and "*the consumer should consult a tax advisor regarding tax implications of this transaction.*"  In addition, a statement of "*the circumstances under which a finance charge will be imposed*" is required.  These statements were not included in the ARM disclosures.

(c)     TILA requires a statement that negative amortization may occur and it will increase the principal balance and decrease the equity in the dwelling.  That statement was not included in the disclosures to Plaintiffs even though negative amortization began during the first month the loan was in effect.

(d)     The amount financed must be disclosed within an accuracy of $100.00.  The actual amount financed is set forth in the Promissory Note that was signed at closing.  The Note states that the amount financed was $563,120.00.  However, the TILA disclosures that were given the Plaintiffs stats that the amount financed was $549,938.57.  This is an error of more than $13,000.00, and, therefore, is not compliant with TILA.

(e)     The interest rage charged must be disclosed within 1/8 of 1%.  This means that the interest rates disclosed in the GFE and HUD-1003 forms must match the actual interest rates charged to the borrower with an accuracy of 0.125%.  The APR includes such things as finance charges, discount points, yield-spread premium, broker fees and closing costs, and, therefore, is not  the "face" interest rate stated on the Promissory Note.  In this case, the actual APR (10.635%) was more than 0.0125% higher than the quoted rate (7.500%).

(f)     Plaintiffs did not receive the statement that outlines the Plaintiffs' consumer rights and the creditor's responsibilities as outlined in § 226.12(c) that is substantially similar to appendix G of TILA (§ 226.6(d).

(g)     TILA requires a lender to provide a consumer with the details of every ARM plan in which a consumer expresses and interest. Plaintiffs did not receive ARM disclosures for other ARM plans besides the 2/28 ARM despite expressing an interest in receiving on a 3/36 and other plans.

(h)     Separate ARM disclosures that were provided to the Plaintiffs did not comply with § 226.19(b)(2), and, therefore were under-disclosed.

66.     TILA contains special requirements for rescission notices, as follows.  The following is an explanation of these requirements and Defendant's violations of the same.

(a)     Two (2) completed Right of Rescission Forms must be given to each consumer who has a right to rescind.  *See* § 226.15(b). According to § 226.23(a), any consumer whose ownership interest is or will be subject to the security interest has the right to rescind. In this case,  Plaintiffs are consumers who must be provided both the rescission notice and a full set of disclosures.  This was not done.

(b)     The rescission notice at issue was defective in that it did not accurately state the "effects" of rescission as required by § 226.15(d).

(c)     The rescission rights in this case have been extended in light of the fact that full disclosures have not been delivered pursuant to § 226.15(a)(3).

67.     As a result of Defendants' violations of TILA, the Plaintiffs suffered monetary damages that include loss of their down payment and payments made to date, penalties and fines for statutory violations, reasonable attorney's fees and costs including expert witness fees and any other and further relief as this court deems just and proper.

**FOURTH CLAIM FOR RELIEF – VIOLATIONS OF TARP AND HAMP LOAN MODIFICATIONS DIRECTIVES**

*Against Defendants American Heritage Lending Corporation, Mortgage Opportunity Group, and Wells Fargo Bank, N.A.*

14

68.    All previous paragraphs are incorporated by reference herein.

69.    Defendants accept funds from the United States Government as part of the Troubled Assets Relief Program ("TARP"), and, therefore, agreed to participate in one or more programs TARP established to minimize foreclosures. These programs include the Home Affordable Modification Program ("HAMP") and the Service Provider Agreement ("SPA") associated with these programs.

70.    Plaintiffs are third party beneficiaries of the TARP and HAMP.

71.    The loan and Defendants both place the transaction directly under the oversight of HAMP.

72.    HAMP requires the lender to do the following:

(a)    Identify loans that can be modified under HAMP.
(b)    Collect financial information from the homeowners to evaluate whether the homeowner is eligible for a loan modification under HAMP.
(c)    Institute a modified loan with a reduced payment for a three-month trial period for eligible borrowers.
(d)    Provide a permanently modified loan to those who comply with the trial period.

73.    HAMP prohibits a lender from:

(a)    Demanding up-front payments in order to be evaluated for a loan modification.
(b)    Instituting or continuing foreclosure proceedings during the evaluation period.
(c)    Reporting negative information to credit bureaus during this time.
(d)    Assessing prepayment penalties for full or partial payment as part of the modification.

74.    Defendants violated the above provisions by requiring up-front payments in order to be considered for a HAMP loan modification, by failing to cease foreclosure proceedings, and delaying and frustrating the loan modification

process by demanding information already in its files, making inaccurate calculations and determinations for Plaintiffs' eligibility for HAMP, giving Plaintiffs contradictory reports, findings and conclusions, and failing to follow through on written, spoken, or implied promises. Plaintiff tried in vain to get a loan modification or refinancing. He contacted the bank numerous times but seemed to get nowhere. He submitted the same documents over and over but was never notified by the bank that the got them. He became discouraged.

75.    As a result of the above violations, the Plaintiffs suffered monetary damages that include loss of their down payment and payments made to date, penalties and fines for statutory violations, reasonable attorney's fees and costs including expert witness fees and any other and further relief as this court deems just and proper.

## FIFTH CLAIM FOR RELIEF – VIOLATIONS OF THE COLORADO CONSUMER CREDIT CODE

*Against Defendants American Heritage Lending Corporation, Mortgage Opportunity Group, and Wells Fargo Bank, N.A.*

76.    All previous paragraphs are incorporated by reference herein.

77.    Defendants violated CRS § 5-3.5-103 that requires that any borrower who signs a loan with a balloon payment must be given a written disclosure that spells out his/her rights to refinance with the same lender when the balloon payment falls due. The loan at issue in this litigation contains a balloon payment but no such disclosures were made.

78.    CRS § 5-3-106 requires a separate disclosure be given to each borrower as follows:

*The dollar amount of the finance charge disclosed to you for this credit transaction is based upon your payments being received by the creditor on the date payments are due. If your payments are received after the due date, even if received   before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of   principal. This is due to the accrual of daily interest until a payment is received.*

Id.

In this case, Defendant American Heritage Lending Corporation and/or Mortgage Opportunity Group and/or their successors/ assignees failed to make any such disclosure to the Plaintiffs.

79.    Defendants were required to provide the statutory cautionary notice required by CRS § 5-3.5-103.

80.    Defendants violated CRS 5-3.5-103(c) because the loan at issue in this litigation causes the principal balance to increase over the life of the loan.

81.    Defendants violated CRS § 5-3.5-102(a) because the loan at issue has a balloon payment that falls due less than ten years after the execution of the loan.

82.    Defendants violated C.R.S. 5-3.5-102(II) by requiring pre-payment fees for the loan at issue herein.  Moreover, a pre-payment fee may be charged only during the first 36 months after the date of the execution and is limited to six (6) months of interest.

83.    Defendants violated CRS 5-3.5-102(III) because they failed to offer the Plaintiffs the option of choosing a loan without a prepayment penalty.

Further, the Defendants failed to comply with the requisite statutory disclosure requirements.

84.    Defendants violated CRS § 5-3.5-103(3) that prohibits the refinancing of "low-rate" loans for at least ten (10) years unless the current holder of the loan consents in writing to the refinancing by allowing the loan at issue to be refinanced prior the expiration of 10 years and without obtaining consent of the current loan holder.

85.    As a result of Defendants' violations of the above statutes, the Plaintiffs suffered monetary damages that include loss of their down payment and payments made to date, penalties and fines for statutory violations, reasonable attorney's fees and costs including expert witness fees and any other and further relief as this court deems just and proper.

## SIXTH CLAIM FOR RELIEF – DECLARATORY RELIEF

*Against all defendants.*

86.    All previous paragraphs are incorporated herein by reference.

87.    The Plaintiffs are interested parties under the deeds of trust, promissory notes and other written contracts and writings constituting a contract between the parties whose rights are affected by the same.

88.    As noted above, the written contracts and writings give the Plaintiffs a right of rescission.

89.    In this case, a notice of rescission was provided to American Heritage on April 10, 2010 by certified mail.

18

90.    Plaintiffs submit that the in light of the fact that a rescission notice was sent to the bank, such notice cancels the bank's security interest and effectively cancels the loan and all payments.

91.    Since the mortgage does not exist in this case under rescission it is impossible for any bank to foreclose, evict, or transfer the property.

92.    Moreover, there is a question of fact as to whether the entities foreclosing upon the property are the real parties in interest given the validity of any assignment or transfer of the loan at issue.

93.    Under these circumstances, the Court has authority to declare the rights, status and legal relations of the parties under these written documents.

## SEVENTH CLAIM FOR RELIEF -- FRAUDULENT CONCEALMENT

### *Against Defendant Wells Fargo*

94.    All previous allegations are incorporated herein by reference.

95.    As noted above, during the foreclosure proceedings, the parties discussed modification of the existing loan.

96.    During the process of the discussions, Defendant Wells Fargo failed to disclose the fact that the Plaintiffs would have to requalify for the loan modification that was the subject of the parties' discussions.  Defendant Wells Fargo should have disclosed this material fact in equity and good conscious.

97.    Defendant Wells Fargo knew that this alleged "standard protocol" that allegedly required Plaintiffs to requalify for the loan modification was not disclosed.

98.     Plaintiffs were ignorant of the Defendant Wells Fargo's alleged "standard protocol" that required them to requalify for the loan modification.

99.     Defendant Wells Fargo intended its concealment of the fact that Plaintiffs would be required to requalify for the loan be acted upon.

100.    As a result of Defendant Wells Fargo's fraudulent concealment, the parties entered into a stipulation that allowed the court to enter an Order Authorizing Sale of their primary residence.   Plaintiffs never would have entered into the stipulation if they knew that they would have to requalify for the loan modification discussed, negotiated, and agreed to by the Plaintiffs and Wells Fargo.

## EIGHTH CLAIM FOR RELIEF – FRAUDULENT INDUCMENT

### *Against Defendant Wells Fargo*

101.    All previous allegations are incorporated herein by reference.

102.    As noted above, Defendant Wells Fargo misrepresented the following material facts: (1) that Plaintiffs would have to requalify for loan modification discussed, negotiated, and agreed to by the Plaintiffs and Wells Fargo; and (2) that Defendant Wells Fargo would that it would provide loan modification documents with a new date; and (3) that Defendant Wells Fargo agreed to enter into an attractive loan modification agreement with the Plaintiffs and would dismiss or  withdraw the foreclosure action upon execution of the loan modification documents counsel for Defendant Wells Fargo agreed to supply to Plaintiffs.

103.    Plaintiffs relied upon Defendant Wells Fargo's misrepresentations when it agreed to enter into the stipulation that resulted in the Order Authorizing Sale dated September 27, 2010.

104.    Plaintiffs had a right to rely on or was justified in relying on Defendant Wells Fargo's misrepresentations regarding the loan modification discussed, negotiated, and agreed to by the Plaintiffs and Defendant Wells Fargo.   Defendant Wells Fargo had a duty to act in good faith during the parties discussions to mitigate their respective losses.

105.    Plaintiffs' reliance resulted in damages.   There is now an order authorizing the sale of their primary residence and the Plaintiffs were not able to execute the loan modification discussed, negotiated, and agreed to by the Plaintiffs and Defendant Wells Fargo.

### NINTH CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION

*Against Defendant Wells Fargo*

106.    All previous allegations are incorporated herein by reference.

107.    To the extent the misrepresentations outlined in paragraph 103 above were the result of oversight or negligence; Plaintiffs bring an alternative claim for negligent misrepresentation.

108.    Defendant Wells Fargo was in the course of its business and had a pecuniary interest in the business transactions at issue.

109.    Defendant Wells Fargo supplied false information to Plaintiffs for their guidance during the course of the Plaintiffs' and Defendant Wells Fargo's discussions regarding mitigating their losses, entering into an agreement to

modify their loan, and stipulation that lead to the Order Authorizing Sale entered on September 27, 2010.   The false information/misrepresentations include those misrepresentations outlined in paragraph 103 above.

110.   The Plaintiffs were justified in relying on Defendant Wells Fargo's misrepresentations.

111.   Defendant Wells Fargo failed to exercise reasonable care or competence in communicating the misrepresentations outlined in paragraph 103 above.

112.   As a result of Defendant Wells Fargo's misrepresentations, the parties have not executed the loan modification agreement discussed and agreed to by Plaintiffs and Defendant Wells Fargo and there is an Order Authorizing Sale of their primary residence.

## TENTH CLAIM FOR RELIEF – PREDATORY LENDING

*Against Defendants American Heritage Lending Corporation, Mortgage Opportunity Group, and Wells Fargo Bank, N.A.*

113.   All previous allegations are incorporated herein by reference.

114.   Predatory lending practices can include the following:

*… exorbitant interest rates, lending based on the value of the asset securing the loan rather than a borrower's ability to repay ("equity stripping," in other words issuing a loan "designed to fail" and profiting by acquiring the property through default, rather than by receiving loan payments), repeated foreclosures, and loan servicing procedures in which excessive fees are charged.*

*Hargraves v. Capital City Mortgage Corp.*, 140 F.Supp.2d 7, 20-21 (D.D.C. 2000).

115.   Defendants issued a loan "designed to fail" and hopes to profit by the same by acquiring the property by default rather than by receiving loan payments.  Moreover, Wells Fargo has engaged in repeated foreclosures.

116.   Predatory lending is prohibited under the HOEPA. See 15 USC § 1639.

117.   As noted above in paragraphs 48-51 above, Defendants violated HOEPA.

118.   As a result of Defendant's predatory lending practices, the Plaintiffs suffered monetary damages that include loss of their down payment and payments made to date, penalties and fines for statutory violations, reasonable attorney's fees and costs including expert witness fees and any other and further relief as this court deems just and proper.

### JURY DEMAND

Plaintiffs respectfully request a jury trial on all claims triable by jury.

WHEREFORE Plaintiffs respectfully request that this court enter judgment in their favor for actual money damages, statutory penalties, and fines for damages pursuant to TILA and any other applicable statute, attorneys fees and costs, including but not limited to witness of and expert witness fees, withdrawal of all negative credit reports, declaratory relief, and any and such other and further relief that may be just under the circumstances.

Respectfully submitted this 22nd day of November 2010.

24

s/ John W. Swanson

_____

John W. Swanson
Law Office of John W. Swanson
34 S. Holman Way, 2F
Golden, Colorado 80401
Telephone:  (720)300-8328
FAX:  (303)952-9187
Email:  swansonjohn2@gmail.com
Attorney for Plaintiffs Fred Himschoot
Mary Himschoot

Address of the Plaintiffs:

599 Soda Creek Road
Idaho Springs, Colorado 80452